## In re WELSH'S ESTATE.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

GUARDIANSHIP—NONRESIDENT—ISSUE OF LETTERS.

> Laws 1896, c. 272, § 51, authorizes a surviving parent to designate a guardian for minors by will. Code Civ. Proc. § 2852, permits objections to the appointment of such person, where his circumstances are such as do not afford adequate protection to the interest, or where he is not a resident of New York, or does not maintain an office therein. Section 2853 provides that, where the surrogate finds that such objections are valid, letters of guardianship shall be granted only upon the giving of a sufficient bond. *Held*, that the surrogate could not refuse to issue letters of guardianship on a finding that the person designated was a nonresident, but could only require a sufficient bond before issuing letters to him.

Appeal from surrogate's court, New York county.

Application by Arthur B. Appleby and another, for appointment as guardians of Florence May Welsh and others, to which Margaret I. Barries filed objections. From a surrogate's order denying the application, applicants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Rastus S. Ransom, for appellants.
Austen G. Fox, for respondents.

RUMSEY, J. The mother of the infants, who was the only surviving parent, died on the 17th day of October, 1899, leaving a last will and testament, by which, among other things, she appointed Arthur B. Appleby, John W. Herbert, and Mrs. Amanda V. Holmes executors of her estate, and directed that such of them as should so qualify should also be the guardians of such of her children as were under the age of 21 years at the time of her death. The will was admitted to probate, and Mr. Appleby and Mrs. Holmes qualified as executors. On the 6th of December, 1899, Mrs. Margaret I. Barries, the married sister of the infant children of the testatrix, filed with the surrogate an affidavit that the two persons named as guardians were nonresidents of the state of New York, and had no place for the transaction of business therein, and she objected to the granting of letters of guardianship to them unless they should give adequate security for the performance of the trust. After that Mr. Appleby and Mrs. Holmes presented a petition to the surrogate, and upon it procured an order to show cause, directed to Mrs. Barries, why the surrogate should not issue letters of guardianship to them upon such terms as might to him seem just. On the hearing, bonds in the sum of $60,000, properly executed, were presented on behalf of the guardians. Affidavits were filed with the surrogate as to the value of the estate of the infants which would come into the hands of the guardians, and, after taking proof, the surrogate denied the application of the appellants to be appointed guardians. The appeal is taken from that order.

In our judgment, that order was erroneous. The mother of these infants, who was the only surviving parent, had an absolute right

to designate who should be the guardians of her children. Domestic Relations Law (Laws 1896, c. 272, § 51). As soon as the will had been admitted to probate, the persons so designated were at liberty to qualify within 30 days, and, when they had so qualified, they were entitled to letters of guardianship. Code Civ. Proc. § 2852. The particular objections here were that the persons named as guardians were not residents of the state of New York, although they were citizens of the United States; and also that their circumstances were such that they could not furnish adequate security. When these objections were made, it was the duty of the surrogate to satisfy himself that they were well taken. Sections 2637, 2852. If the only objection had been that the persons were nonresidents of the state, still the surrogate would have been at liberty to issue the letters if they had an office in the state for the transaction of business. This they attempted to show in the present case, but whether it was proved to the satisfaction of the surrogate or not we are not advised. However, the surrogate was not at liberty to refuse to grant letters of guardianship, even if he had reached the conclusion that they had no such office in the state, or that their circumstances were such that they could not furnish adequate security (section 2638), for he was bound, nevertheless, to issue the letters where these are the only objections, upon requiring such security as the circumstances of the case demand. Whether the particular bond offered was one which, under all the circumstances of the case, was sufficient to secure the infants in whose interest the will created the trust, was a question to be determined very largely in the discretion of the surrogate, and depended very largely upon what amount he considered the value of the estate to be, and the residence and circumstances of the applicant. If it was such as was stated by the objector, it may very well be that the bond was not large enough. But, even if it was too small, he was not at liberty to refuse to grant the letters, but he should have prescribed the amount and the kind of bond that should be given by the guardians, and, upon their giving it, he should issue the letters as required by section 2852 of the Code.

The decree must be reversed, with costs, and the matter sent back to the surrogate, with directions to issue the letters of testamentary guardianship upon the compliance of the applicants for them with the provisions of the statute. All concur.